**WO**                                                                                                          JDN

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Arenberg, | No. CV 10-2228-PHX-MHM (MHB) |
| Plaintiff, | **ORDER** |
| vs. | |
| Charles Ryan, et al., | |
| Defendants. | |

Plaintiff David Arenberg brought this civil rights action under 42 U.S.C. § 1983 against various officials from the Arizona Department of Corrections (ADC) (Doc. 1). Before the Court is Plaintiff's Motion for Preliminary Injunction (PI) (Doc. 5).

The Court will direct Defendant Ryan to file a Supplemental Notice with the Court and deny Plaintiff's motion without prejudice. The Court will also vacate a portion of its prior order dismissing Jim Taylor, reinstate Taylor as a Defendant, and order service on him.

**I.     Background**

Plaintiff's claim arose during his confinement at the Arizona State Prison Complex (ASPC)-Lewis Complex and ASPC-Florence Complex (Doc. 1 at 2-3). He named as Defendants Charles Ryan, ADC Director; Sharon Malcolm, Facility Health Administrator at the ASPC-Lewis Complex; and Jim Taylor, the Regional Health Administrator (id. at 2). Plaintiff alleged that Defendants failed to treat his serious medical need in violation of the Eighth Amendment (id.).

In his verified Complaint, Plaintiff set forth the following facts:

In May 2008, Plaintiff was sent to an outside consultation with a urologist, who diagnosed Plaintiff with an enlarged prostate, prescribed medication, and advised Plaintiff that he would require surgery if the medication did not work. Plaintiff took increasing dosages of the medication for over a year, but his condition worsened. In July 2009, Plaintiff sought medical care, and a prison physician—Dr. Kanter—referred Plaintiff for another outside urology consultation (id. at 3-4).

By November 2009, four months after the referral, Plaintiff still had not seen a urologist, so he initiated the prison grievance process. In response to his grievance, Malcolm informed Plaintiff that ADC had lost its contracts with outside medical providers; therefore, all outside consultations were indefinitely postponed (id. at 4). Plaintiff appealed his grievance but received no responses and did not see a urologist (id.).

In June 2010, Plaintiff was transferred to ASPC-Florence, where he resubmitted his request for an outside urology consultation. On September 14, 2010, he received a response to his grievance appeal from Taylor, who informed Plaintiff that an outside urology consultation would occur within 30 days (id. at 4-5). Taylor also acknowledged the delay in responding to the appeal and apologized to Plaintiff (id.). Plaintiff did not see a urologist within 30 days (id. at 5). Therefore, in October 2010, he initiated this action.

Plaintiff claimed that his medical condition caused him to get up to urinate at least 8-12 times a night. He stated that the condition worsened and urination became so difficult that he was issued and is currently using a catheter (id.). Plaintiff alleged that he suffers severe sleep deprivation and mental anguish (id.).

In conjunction with his Complaint, Plaintiff filed a Motion for PI (Doc. 5). The Court screened the Complaint and ordered Ryan to respond to the claim that he was deliberately indifferent based on his failure to maintain contracts with outside medical providers (Doc. 6). Ryan was also directed to file a response to the PI motion (id.).

The Court found that Plaintiff's allegations against Malcolm and Taylor, however, failed to support a deliberate indifference claim, and they were dismissed without prejudice (id.). Plaintiff moved the Court to reconsider dismissal of these Defendants (Doc. 8).

1 Because Plaintiff did not meet the standard for reconsideration, that request was denied
2 (Doc. 9).

## II. Parties' Contentions

### A. Plaintiff's Motion for PI

Plaintiff seeks an order from the Court directing Ryan and Taylor to immediately arrange an outside urology consultation for Plaintiff (Doc. 5). With his motion, Plaintiff submits his declaration, which restates the facts set forth in his Complaint (id., Attach., Pl. Decl. ¶¶ 2-10). He also submits copies of the grievance response from Malcolm and the grievance appeal response from Taylor (id., Ex. 1).

Plaintiff argues that injunctive relief is appropriate because he is threatened with irreparable harm (id. at 4). He submits that he has been denied care for a serious medical need in contradiction to a physician's instructions; namely, Dr. Kanter's referral for an outside urology consultation (id. at 2, 4). Plaintiff claims that he is suffering mental anguish due to sleep deprivation and the use of a catheter, and he contends that without a preliminary injunction, he is unlikely to obtain the necessary medical treatment in the near future (id. at 5).

Plaintiff next argues that the balance of hardships weigh in his favor (id.). He states that his present and potential future suffering is enormous; whereas, the "suffering" to Defendants consists of taking Plaintiff to a doctor and carrying out that doctor's orders (id.). Plaintiff contends this is something that Defendants are already obligated to do; thus, he maintains there would be no hardship if an injunction is issued (id.).

Plaintiff further contends that an injunction is warranted because he will likely succeed on the merits (id. at 6). Plaintiff notes that he is now using a catheter and clearly suffers a serious medical need. He argues that he has waited over fifteen months to see a urologist to commence the necessary treatment and that treatment has been denied in clear violation of his constitutional rights (id.).

Plaintiff submits that an injunction will serve the public interest because it is always in the public interest for prison officials to obey the law (id. at 7).

Lastly, Plaintiff asks the Court to exercise its discretion to excuse the requirement to post security for injunctive relief (id.). Plaintiff notes that he is indigent and proceeding in forma pauperis (id.).

### B.     Ryan's Motion for Extension

Ryan filed a motion seeking 30 additional days to respond to Plaintiff's PI Motion (Doc. 10). Before receiving any response from Plaintiff, the Court ruled on the motion and denied it part (Doc. 11). Ryan was directed to file a response to the PI motion by December 17, 2010, which was 3 days from the Court's Order (id.).

Two days later, the Court received Plaintiff's response to Ryan's motion for an extension (Doc. 13). In this response, Plaintiff stated that since the filing of his PI motion, he was taken to an outside urologist, who recommended that Plaintiff undergo laser prostate surgery (id. at 1). Plaintiff explained that he still needs to wait for ADC approval before any surgery is performed (id.).

### C.     Ryan's Response to PI Motion

On December 17, 2010, Ryan filed his response to the PI motion (Doc. 14). Ryan opposes the request for injunctive relief (id.). He notes that Plaintiff is seeking a mandatory injunction, which is subject to a heightened burden as compared to injunctions that merely maintain the status quo (id. at 2-3). Ryan contends that Plaintiff's "self-serving declaration" and the attached grievance responses fail to show a likelihood of success or any real or immediate threat to Plaintiff's safety (id. at 3). Ryan further contends that Plaintiff has not demonstrated that the facts and law clearly favor him (id.).

Ryan also relies on Plaintiff's response to the motion for an enlargement of time, in which Plaintiff asserted that he has now had an outside urology consultation and the physician has recommended surgery (id.). Ryan submits that this demonstrates that Plaintiff has received part of his requested relief, and may receive all the requested relief absent an injunction (id. at 4). Ryan therefore asserts that, because the issue may become moot, the request for a preliminary injunction should be denied (id.).

- 4 -

### D. Plaintiff's Reply in Support of PI Motion

In his reply, which is supported by his attached declaration, Plaintiff maintains that he has met the heightened burden and that the factors governing preliminary injunctions all weigh in his favor (Doc. 15 at 1-2; Attach., Pl. Decl.). He states that although ADC took him to an outside urology consultation after his filed in PI motion, he still has not received the treatment prescribed by that urologist—laser surgery to remove the enlarged portion of his prostrate that is impinging on his urethra (id. at 2). Plaintiff explains that upon his return from the urologist, a prison physician—Dr. Phan—advised him that ADC still must approve the surgery (id. at 2-3). Plaintiff asserts that Dr. Phan said he would try to expedite the process but it may take up to nine months if the Court did not intervene (id. at 3). Plaintiff avers that he is in severe distress due to the difficulty with urination and that nine more months before surgery would be too long to wait (id. at 4; Attach., Pl. Decl. ¶ 4). He therefore requests that the Court hold an evidentiary hearing to evaluate his need for surgery and issue an injunction accordingly (id.).

### III. PI Legal Standard

A preliminary injunction is an extraordinary and drastic remedy and "one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129-130 (2d ed. 1995)). An injunction may be granted only where the movant shows that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 374, 376 (2008); Am. Trucking Ass'n, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009). The movant has the burden of proof on each element of the test. Envtl. Council of Sacramento v. Slater, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000). There is a heightened burden where a plaintiff seeks a mandatory preliminary injunction, which should not be granted "unless the facts and law clearly favor the plaintiff." Comm. of Cent. Am. Refugees v. I.N.S., 795 F.2d 1434, 1441

1 (9th Cir. 1986) (citation omitted).

2       The Prison Litigation Reform Act (PLRA) imposes additional requirements on
3 prisoner litigants who seek preliminary injunctive relief against prison officials.
4 "Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to
5 correct the harm the court finds requires preliminary relief, and be the least intrusive means
6 necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Thus, § 3626(a)(2) limits the
7 court's power to grant preliminary injunctive relief to inmates; "no longer may courts grant
8 or approve relief that binds prison administrators to do more than the constitutional
9 minimum." Gilmore v. People of the State of Cal., 220 F.3d 987, 999 (9th Cir. 2000).

10       In attempting to establish either eligibility for an injunction or that a party is not
11 entitled to injunctive relief, the parties may rely on developments that postdate the pleadings
12 and pretrial motions. Farmer v. Brennan, 511 U.S. 825, 846 (1994).

13 **IV.**   **Analysis**

14       To meet the "irreparable harm" requirement, Plaintiff must do more than simply allege
15 imminent harm; he must demonstrate it. Caribbean Marine Servs. Co., Inc. v. Baldrige, 844
16 F.2d 668, 674 (9th Cir. 1988). This requires Plaintiff to demonstrate by specific facts that
17 there is a credible threat of immediate and irreparable harm. Fed. R. Civ. P. 65(b). Mere
18 "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a
19 preliminary injunction." Caribbean Marine, 844 F.2d at 674.

20       Here, Plaintiff declares that since filing his PI motion, he has received an outside
21 consultation with a urologist. As Ryan points out, this is part of the relief Plaintiff sought
22 in his motion. See Farmer, 511 U.S. at 846.

23       Both parties confirm that the urologist recommended laser prostrate surgery, and
24 Plaintiff "assumes ADC is operating in good faith" to take the steps required to approve and
25 schedule the surgery (Doc. 13 at 2). But Plaintiff also states he was told that the approval
26 process could take up to nine months (Doc. 15 at 3). The history of this case is troubling, as
27 is the absence of any information regarding ADC's treatment plan for Plaintiff since his
28 recent consultation with the urologist. Nonetheless, because Plaintiff has, at last, conferred

with a urologist and is apparently being referred for surgery, at this stage he cannot make the requisite showing for a PI. Plaintiff's request for an injunction and a hearing will therefore be denied without prejudice. See Winter, 129 S. Ct. at 375 (movant must demonstrate that irreparable injury is likely without an injunction); Caribbean Marine, 844 F.2d at 674 (holding that the district court erred when it granted preliminary injunction where the plaintiffs did not show that the alleged harm was "imminent or likely").

The Court notes, however, that while Ryan acknowledges that surgery has been recommended, he fails to provide any information concerning the anticipated time frame for surgery, nor does he describe the approval or scheduling process that Plaintiff alluded to in his briefing. Indeed, Ryan does not even confirm that Plaintiff will receive surgery; he states only that Plaintiff "*may* in fact receive all of [the requested relief] without this Court's intervention" (Doc. 14 at 4) (emphasis added). In light of the history of this particular case and the ambiguity of Ryan's response, the Court will direct Ryan to file a Notice with the Court by January 18, 2011, describing the status of Plaintiff's surgery and the week for which it is scheduled. Because of the security concerns associated with disclosing the exact time and date of Plaintiff's surgery, the Court will order Ryan to state in his notice only the week for which it is scheduled, rather than the exact date. The Court expects that Plaintiff will notify the Court and/or renew his motion for injunctive relief if surgery is not performed as scheduled.

## V. **Reinstatement of Defendant Taylor**

As stated, upon screening, the Court dismissed Taylor because the allegations against him failed to state a claim (Doc. 6). The briefing on Plaintiff's PI motion causes the Court to reconsider and vacate its dismissal of Taylor. See City of Los Angeles, Harbor Div. v. Santa Monica, 254 F.3d 882, 885 (9th Cir. 2001) ("[a]s long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient") (internal citations omitted). This decision is based in part on the fact that at the time Plaintiff sought reconsideration of the Court's Screening Order, he still retained the right to amend without

1  leave, and amendment may have corrected the deficiencies in his claim against Taylor. See
2  Fed. R. Civ. P. 15(a)(1).  Because Plaintiff is proceeding pro se, the Court must give him the
3  benefit of the doubt and consider that he was not aware of that option.  See Hebbe v. Pliler,
4  --- F.3d ----, 2010 WL 4673711, at *3 (9th Cir. 2010) (reiterating that where a petitioner is
5  pro se, particularly in civil rights cases, courts must "construe the pleadings liberally and [ ]
6  afford the petitioner the benefit of any doubt") (citation omitted); see also Ashcroft v. Iqbal,
7  129 S. Ct. 1937, 1954 (2009) (in reversing the denial of a motion to dismiss upon finding that
8  the complaint failed to plead sufficient facts to state a claim, the Supreme Court directed the
9  Second Circuit to consider whether remand was appropriate so that the plaintiff—who had
10 counsel—could  amend his complaint to fix the deficiencies).  Plaintiff instead moved for
11 reconsideration, which is subject to a high standard of review—a showing of manifest error,
12 that there was a change in the law, or that there is newly discovered evidence.  See School
13 Dist. No. 1J, Multnomah County v. AcandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993).  As
14 discussed below, the filings submitted since the screening of the Complaint provide more
15 specific factual allegations that are sufficient to state a claim against Taylor.

16      In his Complaint, Plaintiff alleged that Taylor responded to Plaintiff's grievance
17 appeal by informing Plaintiff that an outside urology consultation would be scheduled within
18 30 days and apologizing for the delayed response (Doc. 1 at 4-5).  Plaintiff further alleged
19 that Taylor, as the Regional Health Administrator, was responsible for ensuring that outside
20 medical consultations are made and kept (id. at 6).  Plaintiff claimed that Taylor failed to
21 ensure that Plaintiff had a urology consultation and that he failed to respond to the grievance
22 appeal pertaining to that issue (id.).

23      To state a medical claim, a plaintiff must show deliberate indifference to a serious
24 medical need.  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  This requires a plaintiff to first
25 show a serious medical need by demonstrating that failure to treat his condition could result
26 in further injury or the unnecessary infliction of pain.  Jeff v. Penner, 439 F.3d 1091, 1096
27 (9th Cir. 2006). Second, the plaintiff must show that the defendant's response to that serious
28 medical need was deliberately indifferent.  Id.  This may be evidenced by a defendant's

purposeful act or failure to respond to a prisoner's pain or medical need and harm suffered as a result. Id. Deliberate indifference may also appear where a prison official denies or delays treatment. Id. (citation omitted).

Plaintiff's claims against Taylor in the Complaint were insufficient to support liability because, standing alone, Taylor's role in the grievance process cannot rise to a constitutional violation. And the allegation that Taylor, as the Regional Health Administrator, was responsible for ensuring that outside consultations are kept, could not be distinguished from a claim for respondeat superior liability, which is precluded under § 1983. Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691-92 (1978) (because there is no respondeat superior liability under § 1983, a defendant's position as a supervisor does not impose liability); see Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). As such, Plaintiff's general claims did not sufficiently link Taylor to the alleged deliberate indifference. See Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).

In his PI motion, Plaintiff reasserted that Taylor is responsible for arranging outside urology consultations (Doc. 5 at 1, 3). And in his attached declaration, Plaintiff averred that Taylor provides outside medical appointments for inmates (id., Attach., Pl. Decl. ¶ 12). Plaintiff's evidence includes a copy of Taylor's response to Plaintiff's grievance appeal (id., Ex. 1 at 2). In this response, Taylor identified himself as the Regional Health Administrator, indicated that he reviewed Plaintiff's medical file, and informed Plaintiff that his urology consultation would occur within a month (id.).

Ryan's response to the PI motion does not refute any of Plaintiff's assertions or evidence; it merely argues that Plaintiff's declaration is "self-serving" and that his motion and evidence fail to meet the heightened burden applied to requests for mandatory injunctions (Doc. 14 at 3).[1] Notably, the response does not dispute that Plaintiff suffered a

---

[1] There is no affidavit from Ryan or any medical personnel submitted with the response (see Doc. 14). Footnotes in the response state that defense counsel was unable to "substantively respond to this Motion" without access to Plaintiff's medical records and that she is seeking authorization by mail from Plaintiff to obtain his medical records (id. at 3-4 n. 1-2). Counsel requests that if the Court requires additional briefing, Ryan "be allowed

serious medical need or that Taylor was, in fact, personally responsible for ensuring that Plaintiff received an urology consultation.

Plaintiff's evidence makes it more than plausible, and even probable, that Taylor was responsible for arranging outside medical consultations; he knew from reviewing Plaintiff's medical file that Plaintiff was suffering a serious medical need and that Dr. Kanter had made a referral for a urology consultation in July 2009, but that more than a year had passed without such consultation; and, despite his knowledge of Plaintiff's situation, he failed to ensure that Plaintiff received a urology consultation. See Iqbal, 129 S. Ct. at 1949 (a claim is plausible if the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Accordingly, Plaintiff's allegations, bolstered by his PI motion and evidence, are sufficient to state a claim against Taylor for deliberate indifference to a serious medical need. See Alvarez v. Hill, 518 F.3d 1152, 1158 (9th Cir. 2008) (because the plaintiff was pro se, the complaint's factual allegations could be refined in subsequent filings); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007) (noting that the pro se litigant "bolstered his claim by making more specific allegations . . . in later filings").

The Court will vacate that portion of its Screening Order that dismissed Taylor as a Defendant, reinstate Taylor as a Defendant, and direct him to respond to the claim that he was deliberately indifferent to Plaintiff's serious medical need in violation of the Eighth Amendment.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Plaintiff's Motion for Preliminary Injunction (Doc. 5).

(2) Plaintiff's Motion for Preliminary Injunction (Doc. 5) is **denied** without prejudice.

---

sufficient time to obtain and review [Plaintiff's] medical records" (id. at 4 n. 2). But there is no affidavit from defense counsel to support these statements, nor is there any explanation why authorization could not be obtained expeditiously by facsimile or in person rather than by mail given that Plaintiff is in Ryan's custody and the Court already refused to extend the time for briefing (see Doc. 11).

(3) On or before **January 18, 2011**, Defendant Ryan must file a Notice with the Court providing the status of Plaintiff's surgery and the week for which it is scheduled.

(4) That portion of the Court's Screening Order (Doc. 6) that dismissed Taylor as a Defendant is **vacated**; Taylor is reinstated as a Defendant in this action, as is the claim that Taylor was deliberately indifferent in violation of the Eighth Amendment.

(5) The Clerk of Court must send Plaintiff a service packet including the Complaint, this Order, and both summons and request for waiver forms for Defendant Taylor.

(6) Plaintiff must complete and return the service packet to the Clerk of Court within 20 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(7) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on Defendant Taylor within 120 days of the filing of the complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to Defendant Taylor pursuant to Federal Rule of Civil Procedure 4(m) and Local Rule of Civil Procedure 16.2(b)(2)(B)(i).

(8) The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

(9) The United States Marshal must notify Defendant Taylor of the commencement of this action and request waiver of service of the summons pursuant to Federal Rule of Civil Procedure 4(d). The notice to Defendant Taylor must include a copy of this Order. The Marshal must file waivers of service of the summons or requests for waivers that were returned as undeliverable as soon as they are received. If a waiver of service of summons is not returned by Defendant Taylor within thirty days from the date the request for waiver was sent by the Marshal, the Marshal must:

(a) Personally serve copies of the Summons, Complaint, and this Order upon Defendant Taylor pursuant to Federal Rule of Civil Procedure 4(e)(2);

(b) Within 10 days after personal service is effected, file the return of service

- 11 -

for Defendant Taylor, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant Taylor. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served defendant pursuant to Federal Rules of Civil Procedure 4(d)(2) and (5), unless otherwise ordered by the Court.

(10) **A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(11) Defendant Taylor must answer the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(12) Any answer or responsive pleading must state the specific Defendant(s) by name on whose behalf it is filed. The Court may strike any answer, responsive pleading, or other motion or paper that does not identify the specific Defendant(s) by name on whose behalf it is filed.

DATED this 5th day of January, 2011.

_____
Mary H. Murguia
United States District Judge